UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE JEMISON,

       Petitioner,

                             CASE NO. 03-CV-71781-DT

vs.                            HONORABLE PAUL D. BORMAN
                             HONORABLE STEVEN D. PEPE

SHARON BURT,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

On March 24, 2003, Petitioner filed a motion under 28 U.S.C. § 2254 to set aside his guilty plea pertaining to several drug and firearm offenses.  On March 22, 2004, Petitioner's claims regarding ineffective trial and appellate counsel were referred for report and recommendation under 28 U.S.C. § 636(b)(1)(B).  An evidentiary hearing was conducted on October 21, 2004, and the parties provided the Court with supplemental briefs following this hearing.  For the reasons stated below, it is recommended Petitioner's ineffective trial counsel claims be DENIED.

I.    **BACKGROUND**

Pursuant to information gathered from a confidential informant who indicated that he had purchased heroin from "Willie Jemison" at "147 Barbara Street" in Mt. Clemens on three dates during October 1997, Detective Keely Cochran of the Michigan State Police acquired a warrant.  On October 28, 1997, Detective Cochran and his team executed the warrant and collected heroin, crack cocaine, marijuana and  two weapons from 147 Barbara Street along with documentation indicating that the address was Petitioner's home.  No arrests were made because no occupants were

present.

On July 14, 1998, the Clinton Township Police obtained a search warrant for the same address based upon information from their confidential informant who said that he or she had purchased narcotics from "Sonny Jemison" in Mt. Clemens on two occasions in or around July 1998.[1]  On July 14, 1998, the Clinton Township Police executed its warrant and collected crack cocaine, heroin, marijuana, a loaded handgun and two long guns from 147 Barbara Street.  Petitioner and others were present.  Petitioner was arrested, taken into custody and charged with drug related offenses stemming from the two separate warrants.

Petitioner was initially taken to the Clinton County jail and was later transferred to the Macomb County jail where he was held until his preliminary examination, which Petitioner alleges took place approximately 30 days from the date of his arrest.

Petitioner initially hired legal counsel, Steven Kargenian.  Mr. Kargenian was eventually appointed to serve as Petitioner's counsel by the trial court at Petitioner's request.  Petitioner stated in the evidentiary hearing before this Court that he asked Mr. Kargenian to file a motion to have his case dismissed based on the fact that: (a) his preliminary examination was not held within 14 days as required by the Michigan Rules of Court; and (b) he had never received a copy of the July 1998 search warrant.  Petitioner claims that Mr. Kargenian said he would do so but then failed to follow through. Petitioner also stated that Mr. Kargenian never visited him in jail after the preliminary examination.  Yet, Petitioner's Exhibit No. 10 in support of his Supplemental Brief After Evidentiary Hearing indicates that Mr. Kargenian visited him at least once after the preliminary examination and at least 14 times prior to the examination.

---

[1] As noted below, Mr. Jemison admits that Sonny is his nickname.

Pursuant to a plea agreement, Petitioner pled guilty to the following charges:

> Macomb County Circuit Court Case No. 98-2816 (July, 1998 warrant): possession with intent to deliver heroin (M.C.L. §333.7401(2)(a)(iv)) and possession of a firearm during a felony (M.C.L. § 750.227(b)).

> Macomb County Circuit Court Case No. 98-2817 (October, 1997 warrant): possession with intent to deliver cocaine (M.C.L. § 333.7403(2)(a)(v)) and maintaining a drug house (M.C.L. § 333.7405(d)).[2]

In the evidentiary hearing before this Court, Petitioner alleged that he pled guilty to these charges because Mr. Kargenian told him that: (a) he would be sentenced to 20 - 40 years in prison if he went to trial; (b) that he had no defenses to the charges because all of the drugs and guns found in the house would be attributed to him because the house belonged to him; and (c) he would only have to serve a total of two years in jail if he pled guilty.

On March 2, 1999, the Macomb County Circuit Court took Petitioner's guilty plea and recorded the following *Cobbs*[3] agreement regarding Petitioner's sentence: felony firearm, two years consecutive; possession of heroin with intent to deliver, five - forty years to run consecutive to the felony firearm sentence; possession of cocaine with intent to deliver, two years consecutive to the heroin possession sentence and maintaining a drug house, one year concurrent (with credit for time served). During the entry of the plea the following conversation took place between the judge and

---

[2]The following charges were dismissed pursuant to the plea agreement: Macomb County Circuit Court Case No. 98-2816 (July, 1998 warrant): possession with intent to deliver cocaine, possession with intent to deliver marijuana and maintaining a drug house and Macomb County Circuit Court Case No. 98-2817 (October, 1997 warrant) possession with intent to deliver heroin and possession of marijuana.

[3]A *Cobbs* agreement describes the situation whereby, at the request of a party, a judge may state on the record the length of sentence that appears to be appropriate for a reduced charge pursuant to a prosecutor's offer to reduce charges in exchange for a plea of guilty. This does not bind a judge's sentencing discretion to consider additional facts which may emerge during later proceedings, but a defendant who pleads guilty in reliance upon a judge's preliminary evaluation of appropriate sentence has a right to withdraw his plea if the judge later determines that the sentence must exceed the preliminary evaluation. *People v. Cobbs*, 443 Mich. 276, 283, 505 N.W.2d 208, 212 (1993).

3

Petitioner:

>**Court** - Have you had an opportunity to discuss your case in these proceedings with your attorney?
>**Petitioner** - Yes.
>**Court** - And are you satisfied with his representation of you?
>**Petitioner** - Yes.
>....
>**Court** - Now, have you discussed this plea agreement with your attorney?
>**Petitioner** - Yes.
>**Court** - And you understand it, I take it?
>**Petitioner** - Pretty much so.
>**Court** - Lets make sure you do.  With respect to 98-2816, you're pleading to two charges contained in that information, is that correct?
>**Petitioner** - Yes.
>**Court** - Which two are you pleading to?
>**Petitioner** - Delivery of heroin under –
>**Court** - under 50
>**Petitioner** - under 50
>**Court** - And?
>**Petitioner** - Felony firearm.
>**Court** - Felony firearm.  And with respect to 98-2617, you're pleading to two charges, is that correct?
>**Petitioner** - Yes.
>**Court** - And which two are you pleading to there?
>**Petitioner** - Possession of cocaine under 25 and maintaining a drug house.
>**Court** - So you are pleading to four charges in these two files, correct?
>**Petitioner** - Yes.
>**Court** - And what is going to happen with the balance of the charges?
>**Petitioner** - They are dismissed.
>**Court** - They will be dismissed at sentencing.
>**Petitioner** - Right.
>**Court** - And also you know the *Cobbs* evaluation, we talked about that?
>**Petitioner** - Yes.
>**Court** - And in essence we're talking about two on the felony firearm, five to 40 on the delivery charge, consecutive to the felony firearm, two years on the possession of cocaine, consecutive to the delivery charge, and time served on the maintaining a drug house concurrent with felony firearm with credit for time served on the felony firearm, is that correct?
>**Petitioner** - Yes.  Do the two run consecutive?
>**Court** - You're asking about?
>**Petitioner** - Do the two twos run concurrently even though they are consecutive from the five?
>**Court** - No. The two runs first, which you will get credit for.  After that, the consecutive

4

sentences are imposed.  The time served runs concurrent with the felony firearm, with credit for the time  that you've served against the felony firearm.

Petitioner asked the Macomb County Circuit Court to appoint a new counsel for sentencing and, on April 5, 1999, the Court appointed Maroun Hakim.  On April 7, 1999, a Mr. David Turfe appeared on behalf of Mr. Hakim at Petitioner's sentencing and Petitioner posed no objection.  Mr. Turfe asked that the sentencing court follow the parties' *Cobbs* agreement.  The Court asked Petitioner if he had any objections, corrections, additions or deletions to the pre-sentence investigation report and Petitioner answered "no, your Honor."  The Court also asked Petitioner if he had anything of which he wished to advise the Court before sentencing and he answered, "no, you Honor."  Next the Court attempted to admonish Petitioner and Petitioner corrected the Court:

> **Court** - In this particular matter it appears that you have not learned a lesson of consequences, that you involve yourself in criminal activity while you're on parole.
> **Petitioner** - I wasn't on parole.
> **Probation Officer** - Lifetime probation, your Honor....
> **Court** - Correct.  You had been released...and got yourself involved in further criminal activity....
> **Petitioner** - Your Honor, I was on my probation for ten years without incident.

The Court proceeded to sentence Petitioner in accordance with the *Cobbs* agreement as detailed above.

Mr. Arthur Rubiner was appointed as Petitioner's appellate counsel on November 15, 1999. On January 7, 2000, Petitioner, through his counsel, filed a  motion to withdraw his guilty plea in the Macomb County Circuit Court cases alleging that errors had taken place regarding his sentencing. First, Petitioner alleged that he was denied effective assistance of counsel due to Mr. Kargenian's failure to "effect a *Cobbs* plea which determined the maximum and by failure to bring the discretionary part of the enhanced sentence to the attention" of the trial court.  Second, Petitioner alleged that he was denied his right to due process because the sentencing court had failed to

5

acknowledge, on the record, whether it had exercised its discretion in imposing the maximum sentence for Petitioner's repeat controlled substance offense. This motion was denied on March 9, 2000. The trial court pointed out in its opinion that the parties, including Petitioner, agreed to the sentence on the record and the court did not deviate from the *Cobbs* agreement in sentencing Petitioner.

On March 23, 2000, Petitioner, through his counsel, filed an Application For Leave To Appeal with the Michigan Court of Appeals pursuant to M.C.R. 7.205. Petitioner based his application upon the same alleged errors regarding his sentencing that he had articulated in the Macomb County Circuit Court motion. The Michigan Court of Appeals denied Petitioner leave to appeal on June 1, 2000, citing "lack of merit in the grounds presented."

Petitioner, acting *in pro per*, filed an identical Application For Leave To Appeal with the Michigan Supreme Court on July 12, 2000. The Michigan Supreme Court denied Petitioner leave to appeal on December 27, 2000, stating that it was not persuaded that the questions presented should be reviewed by the Court.

On June 22, 2001, Petitioner filed an *in pro per* Motion For Relief From Judgment in the Macomb County Circuit Court. While he noted in describing the background of his case the legal issues he had unsuccessfully raised earlier, he clearly specified that he "now seeks Relief From Judgment and presents for the first time the issues cited below." These issues were:

> I. The circuit court judge erred in denying Petitioner's request to withdraw his guilty plea, where he was denied effective assistance of counsel thereby rendering the plea involuntary.

> II. Petitioner was denied effective assistance of counsel because his trial counsel failed to investigate defenses, move for suppression hearings, seek adequate discovery and misrepresented the possible sentence, and failed to file a *Brady* violation form.

6

III.  Police never served a copy of the search warrant or affidavit in support of the warrant, and the prosecution deliberately withheld the warrant and affidavit to prevent Petitioner from challenging the legality of the warrant and affidavit. Petitioner was denied effective assistance of counsel because his counsel failed to raise the police and prosecution misconduct in the circuit court.

IV.  Petitioner was denied effective assistance of trial counsel where a conflict of interest existed in a pecuniary nature, making his guilty plea involuntary.

V.  Petitioner was denied effective assistance of counsel when counsel was involved in misconduct preventing him from visiting Petitioner and communicating with him while he was incarcerated.

VI.  Petitioner was denied due process rights and equal protection where police seized his personal property without serving any forfeiture pleadings.

VII.  Petitioner was denied due process rights when a jurisdiction defect existed in the preliminary examination stage, and the examination was not held within the 14-day rule; and Petitioner was denied effective assistance of counsel where counsel failed to challenge the court's jurisdiction and 14-day rule and move for dismissal of the charges.

VIII.  Petitioner was deprived of his liberty without due process and equal protection by the deficient performance of his appellate counsel.

IX.  The cumulative effects of multiple errors deprived Petitioner of due process.

X.  Petitioner is entitled to relief from judgment where he demonstrated good cause and actual prejudice.  There was a miscarriage of justice where his plea was not knowing and intelligent and was a product of cumulative errors and he was denied effective assistance of trial and appellate counsel.

His 40 page brief in support of this motion clearly and separately argued each of his new issues.  Notwithstanding his clearly identifying ten new issues, the trial court construed the arguments to be arguments for ineffective assistance of counsel and violation of his Fifth, Sixth and Fourteenth Constitutional Amendment rights.  After asserting he had "carefully reviewed  defendant's motion and brief, as well as the files, records, transcripts and correspondence relating to the judgment under

attack," the judge concluded that:

> The Court is persuaded that defendant has already unsuccessfully raised similar issues of ineffective assistance of counsel and violation of various constitutional rights in previous motions and on appeal. . . . Thus, The Court finds defendant has failed to raise new issues for postappeal [sic] review.  Based on the forgoing it "plainly appears" from the face of the materials that defendant is not entitled to relief.  MCR 6.504(B)(2) [4]

On July 31, 2001, Petitioner sought leave to file a delayed appeal of the trial court's denial of his Motion For Relief From Judgment to the Michigan Court of Appeals.  The Michigan Court of Appeals denied the application on February 22, 2002, citing a "lack of merit in the grounds presented."  Petitioner then sought leave to appeal from the Michigan Supreme Court, which was denied on December 4, 2002.  The Michigan Supreme Court stated that Petitioner had "failed to meet his burden of establishing entitlement to relief under M.C.R. 6.508(D)."

Petitioner filed this Section 2254 Petition on May 9, 2003.  The original petition contained the ten issues noted above as well as:

XI. The trial judge abused his discretion in denying Petitioner's motion for relief from judgment stating Petitioner had raised similar claims on a prior appeal denying due process.

Judge Borman dismissed issues VI, IX, and XI.  The eight remaining issues stemming from Petitioner's allegation that he was inadequately represented by his trial and appellate counsel were referred for a Report and Recommendation.  Judge Borman also had counsel appointed to represent

---

[4] M.C.R. 6.504 **Initial Consideration by Court.**
> (b)(2)If it plainly appears from the face of the materials described in subrule (B)(1) that the defendant is not entitled to relief, the court shall deny the motion without directing further proceedings.  The order must include a concise statement of the reasons for the denial.  The clerk shall serve a copy of the order on the defendant and the prosecutor.  The court may dismiss some requests for relief or grounds for relief and direct further proceedings as to others.

Petitioner.  These eight claims are overlapping, and the legal issues were narrowed during the evidentiary hearing and in Petitioner's Supplemental Brief After Evidentiary Hearing prepared by his counsel to the following:

1.    Petitioner was deprived of the effective assistance of trial counsel where

   a.    counsel failed to investigate properly the claims against Petitioner,

   b.    counsel failed to file necessary pretrial motions, and

   c.    counsel failed to advise Petitioner properly of the consequences of his guilty plea.

2.    Petitioner's plea was not free and voluntary.

3.    Petitioner was deprived of the effective assistance of appellate counsel where appellate counsel failed to present the issue of ineffective assistance of trial counsel on appeal.

In addition to addressing each claim on the merits, the Respondent has asserted that all of Petitioner's claim are procedurally defaulted and that this independent and adequate state procedural basis for denying Petitioner's relief in state court precludes this Court from reviewing the claims under 28 U.S.C. § 2254.

## II.    ANALYSIS

   A.    *Standard of Review Under the AEDPA*

To be entitled to habeas relief, a petitioner must show that his conviction and/or sentence were imposed in violation of the federal constitution or other federal law.  In addition, a petitioner must establish actual prejudice from the error. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Federal courts must give complete deference to a state court's findings supported by the evidence. *Sumner v. Mata*, 455 U.S. 591, 597 (1982).  Petitioner may rebut the presumption of correctness only with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Smith v. Jago*, 888 F.2d

9

399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Further, trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985). Even a trial court's abuse of discretion, without more, does not show a violation of the federal constitution and therefore does not warrant habeas relief. *Sinistaj v. Burt*, 66 F.3d 804, 805 (6th Cir. 1995).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified 28 U.S.C. § 2254(d) to require where a claim has been adjudicated on the merits in state court proceedings, federal habeas relief shall not be granted unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained how § 2254(d)(1) is to be applied:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405-06 (2000).

A federal court should analyze a claim for habeas corpus relief under the "unreasonable

application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409-11, 120 S.Ct. 1495 (emphasis in original).

B.    *Procedural Bar - Exhaustion of state court remedies.*

Before a state prisoner may challenge the constitutionality of his state court conviction by seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, the state prisoner must first exhaust available state court remedies by presenting his claims to the state courts, to provide them with an opportunity to remedy any constitutional infirmities in his conviction.  28 U.S.C. § 2254(b) and (c); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal review of the conviction.  *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1978).   Moreover, submission of a new claim to a state's highest court on discretionary review does not constitute fair presentation of the claim to the state courts, as is required for exhaustion.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

11

If a prisoner fails to raise a claim in his direct appeal or prior post-conviction proceedings (if any), he waives that claim for purposes of habeas review unless he can show cause for the default and actual prejudice from the constitutional error. *Rust*, 17 F.3d at 160. Generally, a petition containing at least one issue that was *not* presented to the state courts must be dismissed for failure to comply with the total exhaustion rule. *Id.*

In the present matter the first ten issues in Petitioner's Section 2254 petition are identical to those he asserted as new issues in his motion for relief from judgement that he filed in the Macomb County Circuit Court. These claims plus his claim XI – that the trial judge errored in saying the ten new claims were similar claims to those raised in his prior appeal – were asserted in his briefs filed in support of the applications for leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court. Therefore, the eleven issues initially brought before this Court have clearly been raised before the Michigan state courts, although at least the trial judge did not appear to recognize that they were different ineffective assistance of counsel claims than those raised before on direct appeal.

Given the peculiar reception they received in the Michigan courts, we must determine if these claims were procedurally barred by the Michigan state courts pursuant to M.C.R. 6.508(D)(1)-(3). If Petitioner "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" unless Petitioner can show cause for the default and prejudice because of it, or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In order for the doctrine of procedural default to apply in this case, the last state court from which Petitioner sought review must have invoked a state procedural rule as a basis for its decision

12

to reject Petitioner's federal claims. *Coleman*, 501 U.S. at 729-30. And, the state procedural rule must constitute an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "A state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir.1996).

The last state court from which Petitioner sought review, the Michigan Supreme Court, denied relief stating that: "...defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." Prior to *Abela v. Martin*,  380 F.3d 915, 922 -923 (6th Cir.2004), Sixth Circuit cases indicated that a general reference to M.C.R. 6.508(D), without more, was sufficiently clear to constitute an express procedural bar. *Simpson v. Jones*, 238 F.3d 399 (6th Cir.2000), *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir.2002). The *Abela* case has made the analysis more sophisticated so that the mere citation to "M.C.R. 6.508(D)," without reference to any of its three subsections, is not necessarily a reference to the procedural default provisions set forth in M.C.R. 6.508(D)(1)-(3). *Abela*, *supra*, 380 F.3d at 922 -923.

M.C.R. 6.508(D) pertains to motions for relief from judgment, and states in relevant part:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

13

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief....

Only if the state court "clearly and expressly stated that its judgment rested on a procedural bar" can a procedural bar be invoked by Respondent. *Sparkman*, 94 F.3d at 202. Here, as in *Abela*, *supra*, the Michigan Supreme Court only referenced M.C.R. 6.508(D), generally, as the basis for denying Petitioner leave to appeal the judgment of the Michigan Court of Appeals. M.C.R. 6.508(D) states that "[t]he defendant has the burden of establishing entitlement to the relief requested." Although 6.508(D)(1), (2), and (3) list procedural grounds for denying Petitioner relief from judgment, the *Abela* panel made it clear that these three procedural grounds are not the exclusive grounds for a state court to have denied relief pursuant to M.C.R. 6.508(D). The state court could have denied relief from judgment for the non-procedural reason that Petitioner simply failed to meet his burden of establishing entitlement to the relief requested as required by the first sentence of M.C.R. 6.508(D). As such, the Michigan Supreme Court's citation to M.C.R. 6.508(D) in its order denying Petitioner leave to appeal does not, on its own, demonstrate that the Court denied him leave to appeal on the basis of a procedural default. One must look to the lower court opinions to understand the full context of the higher court's language, and in *Abela,* the Michigan Court of Appeals' denial of Petitioner's application was denied "for lack of merit in the grounds presented." Obviously, this failure on the merits would also fail to meet M.C.R. 6.508(D)'s requirement that "[t]he defendant has the burden of establishing entitlement to the relief requested."

14

*Abela* distinguished *Simpson* and *Burroughs* where the lower state courts had indicated in their opinions that their rulings were based upon a procedural bar even though the trial judges also discussed and rejected the merits of the respective defendant's claims. The *Abela* Court found this difference to be material:

> In short, unlike in *Simpson* and *Burroughs*, the state courts below the Supreme Court never invoked a procedural bar here, but rather repeatedly ruled on the merits, The procedural circumstances in this case are, therefore, materially different from those in *Simpson* and *Burroughs*, where the lower state courts actually invoked a procedural bar, making it clearer that the Michigan Supreme Court was also invoking such a bar when it referred to M.C.R. 6.508(D). But given that all of the lower state courts adjudicated Abela's case on the merits, it is not at all clear that the Michigan Supreme Court's summary order relies on a procedural bar, as opposed to the non-procedural reason that Abela simply failed to meet his burden of "establishing entitlement to the relief requested." Indeed, given the line of prior merits determinations in Abela's case, it is just as reasonable to presume that the Michigan Supreme Court's reference to M.C.R. 6.508(D) signaled its agreement with the lower courts' merits determination as it is to presume that the reference signaled, for the first time in this case, the invocation of a procedural bar.

*Abela,* 380 F3d at 923.

The present case is between *Simpson* and *Burroughs* on the one hand and *Abela* on the other. Unlike *Simpson* and *Burroughs* not all of the courts below the Michigan Supreme Court discussed procedural default. Here the Michigan Court of Appeals denied Petitioner leave to appeal citing "lack of merit in the grounds presented" making no reference to M.C.R. 6.508(D). Yet, unlike *Abela*, not all lower courts here ruled on the merits, because the trial judge rejected the motion because "defendant has already unsuccessfully raised similar issues of ineffective assistance of counsel and violation of various constitutional rights in previous motions and on appeal. . . . Thus, the Court finds defendant has failed to raise new issues for postappeal [sic] review. Based on the forgoing it "plainly appears" from the face of the materials that defendant is not entitled to relief. MCR 6.504(B)(2)."

15

While the circuit judge did not mention MCR 6.508(D)(2), which is the procedural default rule for issues decided against the defendant in a prior appeal, the language of the opinion makes it clear that this is the reasoning, notwithstanding the fact that the circuit judge was clearly wrong because the ten new issues raised were different from the three earlier rejected in Petitioner's direct appeal.  Yet, here the Michigan Court of Appeals also ignores M.C.R. 6.508(D) or any reference to M.C.R. 6.508 in finding that Petitioner's request for relief from judgment should be denied for "lack of merit in the grounds presented."   It cannot be said that this was not a review and rejection of the 11 new claims for "lack of merit ."  The Michigan Supreme Court stated that Petitioner had "failed to meet his burden of establishing entitlement to relief under M.C.R. 6.508(D)."   As in *Abela*, this general reference to M.C.R. 6.508(D) without citing its subsections could be a finding not of procedural default but rather a finding that defendant had not met M.C.R. 6.508(D)'s requirement that "[t]he defendant has the burden of establishing entitlement to the relief requested" because his eleven new claims lacked merit.

Thus, in the present case while there are grounds under M.C.R. 6.508(D)(3) that Petitioner could have been found to be procedurally defaulted for raising new issues that could have been raised on his earlier appeal, the only Michigan judge who indicated a procedural default was the trial judge who erroneously determined that Petitioner was not raising any new issues other than those he had already lost on in his earlier appeal.   Yet, this was not the last "reasoned" state court opinion.  That was the decision of the Michigan Supreme Court given the Sixth Circuit's opinions that even a general reference to M.C.R. 6.508(D) is sufficiently reasoned to count.  Here, the Michigan Supreme Court's reference to M.C.R. 6.508(D) could, as in *Abela*, be a reference to a failure on the merits as the Michigan Court of Appeals had indicated and not a procedural default.  Because it cannot be said

16

that the last reasoned opinion in Michigan "clearly and expressly stated that its judgment rested on a procedural bar,"[5] Petitioner's claims should be treated as exhausted and not procedurally barred. Therefore, Petitioner is entitled to a review of the merits of his petition.[6]

      C.    *The Effectiveness of Petitioner's Assistance Of Counsel*

The Supreme Court has established a two prong test for determining whether counsel's performance was ineffective for Sixth Amendment purposes:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In the case where a defendant is seeking to set aside their guilty plea the "second, or 'prejudice,' requirement, ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

[5] *Simpson v. Sparkman*, *supra,* 94 F.3d at 202.

[6] As is too commonly the case, it appears that the time it has taken for this Court to determine a procedural issue on whether the merits can be addressed has exceeded the total time the three Michigan courts spent on Petitioner's new claims.

17

The standard to be applied is not that of a hypothetical perfect counsel, but that of reasonably effective counsel under prevailing professional norms. *Strickland*, *supra*, 466 U.S. at 687-88. The fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id*.

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance. . ." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd without opinion*, 972 F.2d 348 (6th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993). As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). A fair assessment of Mr. Kargenian's performance requires that every effort be made to eliminate the distorting effects of hindsight, so as to reconstruct the circumstances of his challenged conduct, and to evaluate the conduct from his perspective at the time. *Stickland*, *supra*, 466 U.S. at 689.

Again the issues of ineffective assistance of trial counsel involves claims that Mr. Kargenian (i) failed to investigate properly the claims against Petitioner, particularly in failing to get the affidavit in support of the search warrant to discover the age discrepancies between the drug seller who sold to the C/I and Petitioner; (ii) failed to file necessary pretrial motions to challenge the search warrant and its manner of execution, and a motion to dismiss for the delays in holding the preliminary exam; and (iii) failed to advise Petitioner properly of the consequences of his guilty plea.

In the July 1998 affidavit in support of the search warrant the affiant notes that the confidential informant ("C/I") "says that [on or about May 29, 1998] a black male of the name of 'Sonny' about 35 years of age, is selling crack cocaine from 29 Meadle, Mt. Clemens. On June 22, the C/I "says that 'Sonny' now resides at 147 Barber, Mt. Clemens. The affiant adds that "[i]nvestigation reveals that 'Sonny" is Willie Jemison, B/M, 1-27-44 of 147 Barber, Mt Clemens, MI." On July 6, the C/I "says that ;'Sonny' is selling crack cocaine from  147 Barber, Mt Clemens, MI" and had made a controlled buy of crack that day from "Sonny." The affidavit also noted that a "L.E.I.N./S.O.S./ check reveals that Jemison, b/m. 1-27-44 resides at 147 Barber, Mt Clemens, MI," which is the place to be searched, and that he had a drug conviction in 1978, and a delivery of cocaine, less than 50 grams arrest in 1998.

Petitioner, at the time of the offense, was a 54 year-old black male, living at 147 Barbara Street. While acknowledging that he has a nickname of "Sonny,"  Petitioner alleges that the age discrepancy in the warrant would have led him to believe that his girlfriend's brother, Maurice Johnson, a man apparently closer to 35 years of age, was actually the person selling drugs out of Petitioner's home.

Mr. Kargenian, at the time he determined what to investigate and later when he advised

19

Petitioner on his plea in March 1999, would also have known of the likely nature of the prosecution case from the two preliminary examinations he was involved in on September 22, 1998.   The first exam dealt with a July 1998 incident related to Petitioner's plea to the heroin and felony firearm charge, and the second exam involved an October 1997 incident related to Petitioner's plea to the cocaine and maintaining a drug house charge.   As part of the plea agreement the cocaine, the marijuana and the maintaining a drug house charges related to the July 1998 incident were dismissed as were the heroin and marijuana charges related to the October 1997 incident.

At the first hearing Detective Rudolph Gacobelli testified that on July 6 and 14, 1998, he had supervised controlled purchases of narcotics from 147 Barbara Street in Mount Clemens using a confidential informant (C/I). (*People of the State of Michigan v. Willie Jemison* and *People of the State of Michigan v. Sharon Denise Johnson* Preliminary Examination Transcript, September 22, 1998, Michigan 41B District Court, Case # 98-2370 & # 98-2371,  p. 10.).  Based on C/I information the affiant had reason to believe that Willie Jemison was selling narcotics from that address.

After the second C/I buy the police obtained and executed a search warrant on that location on the same day at approximately 10:00 PM.  (*Id.* at 11).  Willie Jemison and his girlfriend, Sharon Johnson, were in the kitchen seated at he table with a white couple and a black female was in the living room. (*Id.*  at 11 & 39).  In a brown pouch, on a shelf near the table, was a hard plastic box containing what field tested to be crack cocaine and eight folded packets of paper containing what field tested as heroin.  (*Id.* at 13 and 41).  It was later noted that there were documents in the brown bag linking it to Petitioner and no other person.  (*Id.* at 32 & 46).  On the kitchen table was a digital scale, and a plastic vile containing several hand-rolled cigarettes and a clear plastic bag all containing what field tested as marijuana.  (*Id.* at 15).  Underneath the kitchen table was a loaded 38 caliber

20

handgun; two long guns – a 22 and a shotgun later acknowledged to be hunting guns – were found in the bedroom later noted to be Petitioner's room. (*Id.* at 15 & 24). A large wooden tool box was also found in the kitchen with the name of George Ballinski, who when contacted reported it had been stolen in Sterling Heights. (*Id.* at 16-17). Small paper packages of suspected marijuana were also found in the first floor master bedroom which Detective Gacobelli believed was Petitioner's room because of the clothes in the closet. (*Id.* at 17 & 23). An open packet of heroin was on the living room television entertainment center. (*Id.* at 17). A driver's license issued to Willie Jemison at that address was also seized, and a LEIN search also indicated Willie Jemison was living at that address. (*Id. at 18*).

When cross-examined by Mr. Kargenian about the C/I making the controlled buys on July 6 and 14, he said it was a black male, named "about 40 years old, named 'Sunny'" (sic). (*Id.* at 34). One hundred dollars of the pre-recorded buy money was found in Petitioner's pocket. (*Id.* at 34). It was acknowledged that Petitioner was not provided a copy of the search warrant, and Mr. Kargenian asked that the case be dismissed on that basis. (*Id.* at 49). The district court judge denied the request because no motion was filed and this issue was not raised at the beginning of the preliminary examination but noted the issue was preserved for the circuit court. (*Id.* at 50-51).

At a second preliminary examination immediately followed on another incident that related to his maintaining a drug house charge Detective Keely Cochran again testified about an October 1997 investigation of heroin trafficking involving 147 Barbara Street, Mount Clemens. (*People of the State of Michigan v. Willie Jemison* Preliminary Hearing Transcript, September 22, 1998, Michigan 41B District Court, Case # 98-2370). Supervised C/I buys were made on October 6, 20, and 27, 1997. (*Id.* at 7). Information indicated that the purchases were from a black male,

21

named Willie Jemison, with a nickname of "Sonny." (*Id.* at 8 & 26). On October 28, a search warrant was executed at that address at 9:00 PM. (*Id.* at 9). Heroin, crack cocaine, marijuana and two weapons were found, as well as a triple beam scale and packaging materials, residency papers and a photograph of Petitioner. (*Id.* at 9, 13-14). During the search Petitioner's girlfriend, Sharon Johnson, who also lived there, arrived.

      1.      Trial Counsel's Assistance

          a.      Allegations Regarding Failure to Investigate

Petitioner's claim regarding his trial counsel's failure to properly investigate his charges is two-fold. First, based upon Mr. Kargenian's alleged failure to secure a copy of the July 14, 1998, search warrant and its supporting affidavit. Petitioner alleges he was unaware of the availability of a third-party fault defense to the charges to which he pled guilty. As noted above, the July 1998 affidavit suggests that the drug dealer who sold to the C/I from Petitioner's residence was substantially younger than Petitioner. Second, Petitioner claims that Mr. Kargenian erroneously advised him that all of the drugs and weapons found in Petitioner's home would be "attributed to him."

The *Hill* court sets out the analysis to be used in a case involving a guilty plea on whether the failure to investigate "prejudiced" Petitioner by causing him to plead. This analysis of whether the failure to investigate caused the defendant:

> to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would

have succeeded at trial.

*Hill*, *supra*, 474 U.S. at 59.

Clearly a reasonably effective counsel under prevailing professional norms would obtain and review all of the available documents that supported the prosecution's case, including any search warrants and affidavits in support thereof. If Mr. Kargenian failed to do so before advising Petitioner to plead, this would satisfy the first part of the *Strickland* test.[7] The question is whether this failing prejudiced Petitioner under the second *Strickland* standard. The areas of possible prejudice asserted by Petitioner are two. This determination of possible prejudice from failing to get the affidavit blends into the issue of Mr. Kargenian's failing to file appropriate motions and his failing to advise Petitioner adequately concerning his potential defenses prior to the plea, which would involve Petitioner's habeas claim that his plea was not knowing and voluntary. First, would the discovery of this age discrepancy have provided grounds to challenge the search warrant and suppress all of the evidence seized in the July search of Petitioner's home. Second, did the failure of obtaining this search warrant application deprive Petitioner and his counsel of recognizing and pursuing a reasonably viable defense of an alternate, substantially younger suspect, and did the lack of such a defense theory lead to inadequate advise of counsel on the plea deal that Petitioner accepted. Thus, the prejudice aspect of the failure to investigate will be analyzed under the other ineffective assistance of trial counsel claims regarding failure to file motions and properly advise Petitioner concerning his plea.

b.      Allegations Regarding Failure to File Pretrial Motions

---

[7] While there is only hearsay evidence regarding the timing of Mr. Kargenian's receipt of the July 1998 warrant, for purposes of this review it will be assumed it was after Petitioner entered his plea..

Petitioner does not argue that his counsel should have moved for suppression of the evidence obtained during the July 14, 1998, search because of the failure of the officers to provide the warrant to Petitioner.[8]   Rather it is argued that a suppression hearing should have been held  under  *Franks v. Delaware*, 438 U.S. 154 (1978).   *Franks* held that suppression may be appropriate where a defendant can demonstrate that a search warrant was obtained based on  deliberate falsehood or a reckless disregard of the truth.  *Id.* at 155 and 171.  Yet, *Franks* made it clear that there is a Fourth Amendment violation only "if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155.  There is no violation of a constitutional magnitude where "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient

---

[8]  Similar to Fed. R. Crim P 41(f)(3), Michigan law requires that a search warrant and a tabulation of the property seized is to "be left at the scene or otherwise be given to the premises owner." *Id.*  at 769 (citing since amended Mich. Comp. Laws 780.655, M.S. A. 28.1259(5) (1967)).  At the time of Petitioner's arrest, Michigan law also required that warrants either state the grounds for issuance or have a copy of the affidavit attached.  *People v. Sobczak-Obetts*, 463 Mich. 687 (2001)(citing since amended Mich. Comp. Laws 780.654, M.S. A. 28.1259(4) (1967)).  Since the July 1998 search of Petitioner's premises, Michigan no longer requires the affidavit supporting the warrant be provided.  Yet the *Sobczak-Obetts* Court held that the exclusionary rule would not apply in cases where officers failed to provide the defendant with a copy of a search warrant affidavit.  *Id.* at 711.  The court reasoned that, because such a failure would not effect the manner in which evidence was seized, it would be unreasonable, absent police misconduct, to apply the exclusionary rule which was designed merely to serve as a deterrent to illegal seizures.  *Id.*

Prior to *Groh v,. Ramirez,* 540 U.S. 551(2004), the prevailing view was that the requirement to provide a warrant to the owner of the premises was ministerial only and not a Fourth Amendment requirement.  LaFave, SEACH AND SEIZURE (Fourth Edition) (West Criminal Practice 2004), § 4.2, p. 812.  Thus, in 1998, it would not have been ineffective assistance of counsel for a Michigan attorney not to seek suppression on the failure of the police to provide the defendant with a copy of the warrant at the time of the search.  *Groh,* however, suggests the possibility of a constitutional requirement of providing a copy of the warrant when it notes that one of the "high functions" of the Fourth Amendment flowing from its particularity requirement is to give some sort of right of the person at the search scene to learn about the warrant's limitations and to assure "'the individual whose property is searched and seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'"  *Id.* at p. 813 noting *Groh* one sentence quote of *United States v. Chadwick*, 433 U.S. 1 (1977).

content in the warrant affidavit to support a finding of probable cause." *Id.* at 171.   In the present case, if on July 14, 1998, the age of "35" for the seller in subparagraph 3.H. of the affidavit in support of the search warrant was corrected to Petitioner's correct age at the time of 54, as was noted in the next subparagraph 3.I. which states that "'Sonny' is Willie Jemison, B/M, 1-27-44 of 147 Barbara, Mt. Clemens, MI," or if the age was omitted totally from subparagraph 3.H. , "there remains sufficient content in the warrant affidavit to support a finding of probable cause" to search 147 Barbara, Mt. Clemens, MI.

Thus, even if Mr. Kargenian had obtained the warrant and affidavit in a timely manner, it would not be ineffective assistance of counsel not to bring a motion to suppress under *Franks,* because the. motion would have been denied.  Thus,  foregoing  this suppression hearing would not have affected the advice counsel gave to Petitioner concerning his plea  nor has Petitioner demonstrated it caused or contributed to his decision to plead guilty.

Petitioner claims that Mr. Kargenian also provided ineffective counsel by failing to file a motion for dismissal of his claims pursuant to M.C.L. 766.4, which requires that a preliminary examination be scheduled within 14 days of a defendant's arraignment.  Yet, such a dismissal is without prejudice, and the prosecution could have refiled all of the criminal charges. Absent something to suggest that the State of Michigan would have folded its tent and abandoned the case after such a dismissal, Petitioner has failed to show prejudice from this motion not having been  filed, nor  has Petitioner demonstrated this caused or contributed to his decision to plead guilty.

Petitioner explained  in the evidentiary hearing that he spoke with Mr. Kargenian about filing a motion regarding the fact that they had not received the July 1998 search warrant and the delayed preliminary examination before he pled guilty to the charges in this matter.  Therefore, it cannot be

25

said that Petitioner was unaware of Mr. Kargenian's failure to file these motions when he pled guilty. It is clear that Petitioner pled guilty with full knowledge of the availability of these issues and the fact that no such motion had been filed.

The other claimed prejudice is that had Petitioner known of the age discrepancy in the search warrant affidavit, he would have had a defense theory that his girlfriend's brother, Maurice Johnson, who lived nearby, had access to his home even when Petitioner was not there, and was nearer in age to the person described in the affidavit as the person selling drugs. Respondent notes that at the September 22, 1998, preliminary examination – well before the March 2, 1999, plea – Detective Rudolph Gacobelli, the affiant on the July 14, 1998, search warrant affidavit, testified that the person named "Sunny" (sic) selling drugs to the C/I was about 40 years old. (*People of the State of Michigan v. Willie Jemison* and *People of the State of Michigan v. Sharon Denise Johnson* Preliminary Examination Transcript, September 22, 1998, Michigan 41B District Court, Case # 98-2370 & # 98-2371, p. 34.) While this misstated the 35 age Detective Gacobelli put in his affidavit, it would give Petitioner notice that a much younger person was described.

With this information, a defendant in Petitioner's position who was innocent, would likely have considered that if he was not selling the drugs, then someone else must be, and that person was substantially younger according to Detective Gacobelli's testimony. It is likely that between September 1998 and March 1999, such a person – focusing on the question of how he got framed – would have figured out that maybe that alternate suspect was his girlfriend's brother, Maurice, and shared this idea with his attorney before pleading guilty. With this information, a defendant in Petitioner's position who was guilty, could also have figured out that the alternate suspect defense pointing to Maurice Johnson should be explored using the age differential of 54 and 40. It is not

26

convincing that such an alternate suspect defense theory would only have been identified if the warrant affidavit was obtained to demonstrate the age differential of 54 and 35.

Yet, assuming the warrant affidavit was obtained, and this alternate suspect theory was identified with the age differential of 54 and 35, would a reasonably effective attorney under prevailing professional norms have recommended pursuing this defense at trial and rejecting a plea bargain in which the state would dismiss October 1997 charges of marijuana possession and possession with the intent to deliver heroin, and July 1998 charges of possession with the intent to deliver cocaine, and possession with the intent to deliver marijuana charges?

Such an attorney had a 54 year old client with a prior drug offense who was out on probation. No suppression motions were viable, thus this client faced a trial where evidence would show an investigation of drug trafficking was ongoing in October 1997 involving his client's house at 147 Barbara Street, Mount Clemens. The state likely had available, if needed, a confidential informant who could testify that on October 6, 20, and 27, 1997, he purchased drugs from a black male, named Willie Jemison, with a nickname of "Sonny" at the Barbara Street residence where Mr. Jemison resides with his girlfriend. The C/I might be able to identify Willie Jemison. A October 28 search of the client's house found no one present initially the client's girlfriend, Sharon Johnson, later arrived, apparently expressing no surprise that the police found heroin, crack cocaine, marijuana, two weapons, a triple beam scale and packaging materials, residency papers of the client and his photograph.

The defense lawyer, if he hoped to present a viable alternate suspect defense that it was Maurice Johnson or someone else masquerading at 147 Barbara Street as Willie "Sonny" Jemison in October 1997, would have all to explain. Such activities seemed to have continued in his client's

27

home, because evidence was likely available that on July 6 and 14, 1998, a C/I again purchased narcotics at 147 Barbara Street from a black male known as Sonny ("Sunny") believed by the C/I to be Willie Jemison using pre-recorded currency.  While the search warrant affidavit identified this individual as being 35, the next sentence of the affidavit said the C/I said Sonny resided at that address and the next sentence reveals that at least the affiant knew that Willie Jemison was born on January 29, 1944, making him 54 years old.  The defense lawyer, in appraising the alternate suspect defense theory,  would also know that after the July 14 C/I buy,  the police executed a search warrant and at approximately 10:00 PM on that day Willie Jemison and his girlfriend, Sharon Johnson, were seated at the kitchen table with a digital scale, several hand-rolled cigarettes and a clear plastic bag containing marijuana and a loaded 38 caliber handgun either taped or on a shelf under the kitchen table.  On a shelf near the table was brown pouch, a plastic box containing crack cocaine and eight folded packets of paper containing heroin, with the only identifying documents in that bag linking it solely to Willie Jemison. The evidence will likely show a 22 rifle and a shotgun in Willie Jemison's bedroom and an open package of heroin in his living room entertainment center.  While the police found a white couple and another black female present, neither of them fit the C/I's description of the drug dealer, nor was Maurice Johnson present.  One hundred dollars of the pre-recorded buy money was found in Willis Jemison's pocket, which is the same amount as the total of the ten currency bills recorded by Detective Gacobelli in his July 14 affidavit describing the controlled buy.

While Petitioner has presented this alternate suspect theory concerning Maurice Johnson, there is not, for understandable reasons, any evidence from Sharon or Maurice Johnson or anyone else suggesting additional evidence supportive of this defense theory.  While Petitioner made certain

28

statements about where Maurice Johnson lived and his access to Petitioner's home, it is not clear Petitioner would have chosen to testify at trial given his prior drug conviction. Thus, Petitioner's hypothetical reasonably effective defense attorney would have mostly the age discrepancy in the search warrant affidavit to present this defense theory for a client whose residence was twice found to contain guns and drugs in close proximity to C/I drug buys which happened at his home from a person using his name, and on the second occasion Petitioner was sitting at a table with drugs, a scale, a loaded gun, and a bag with items identifying him and containing cocaine and heroin packages for sale, and the total marked proceeds from that day's C/I drug buy in his pocket.

In addition to not obtaining the search warrant affidavit, Petitioner claims that Mr. Kargenian erroneously advised him that all of the drugs and weapons found in Petitioner's home would be "attributed to him." While ownership of the home and non-exclusive possession of drugs may not be enough, standing alone, to support a drug possession charge, Michigan law does allow possession of drugs to be proven by "totality of the circumstances....[such as] exclusive control or dominion over property on which narcotics are found." *People v. Wolfe*, 441 Mich. 1201, 521, 489 N.W.2d 748, 754 (1992). In this case drugs and weapons were found not once but twice in the Petitioner's home, the second time in close proximity to him with some of his identifying information in the brown bag. In addition, the scale and packaging materials and the total proceeds from the July 14 C/I buy being in Petitioner's pocket are additional circumstantial evidence not only of possession but also of distribution of drugs. Therefore, it cannot be said that Mr. Kargenian acted outside of the range of reasonable professional assistance if he advised Petitioner to take the prosecutor's plea offer because the drugs and weapons taken from Petitioner's house would likely be attributed to him by a jury if they chose to go to trial.

29

Based on the totality of the evidence, Petitioner has failed to show that a reasonably effective defense attorney faced with these circumstances and having the July 14, 1998, search warrant affidavit with the age discrepancy, would have advised his client to turn down the plea offer involving dropping half of the criminal charges and recommended Petitioner go to trial using this exceedingly weak alternate suspect theory and little defense to the possession and distribution charges.  Thus, Petitioner has failed to carry his burden of demonstrating that had the July 14, 1998, search warrant affidavit been obtained in a timely fashion by his defense attorney  there is a reasonable probability that he  would not have pleaded guilty and would have insisted on going to trial.  *Hill*,  474 U.S. at 59.

> c.   Allegations Regarding Failure to Advise Petitioner of the Consequences of his Guilty Plea

Petitioner alleges that Mr. Kargenian advised him that he would be sentenced to a total of two years in prison (and time served) if he accepted the prosecutor's plea agreement in this matter.  As stated above, when a defendant is seeking to set aside their guilty plea due to ineffective assistance of counsel they must show that there is a reasonable probability that, but for counsel's errors they would not have pleaded guilty and would have insisted on going to trial.  *Hill*,  474 U.S. at 59.  Mr. Kargenian did not testify at the hearing on this motion, nor were there any factual findings on this issue in the state court.  Yet, even if we assume that Mr. Kargenian did provide this incorrect advice the trial court's proper and lengthy conversation with Petitioner regarding the *Cobbs* agreement in this matter set out above "can be said to have cured any misunderstanding [Petitioner] may have had about the consequences of his plea" thereby negating the prejudice prong of the *Strickland* test. *Ramos v. Rogers*,  170 F.3d 560, 565 (6th Cir.1999), *see also, Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993), *cert. denied*, 510 U.S. 1099 (1994) (the trial court's "thorough examination at the

30

hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2nd Cir.1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under Strickland ).  To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless.  *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir.1992), cert. denied, 507 U.S. 932 (1993).  Regarding the question of whether Petitioner would not have pled guilty had he known that there would not be a challenge to the search warrant nor to the tardy preliminary examination, it appears Petitioner was aware of such issues at the time of his plea.

### 2.     Appellate Counsel's Assistance

Petitioner's ineffective assistance of appellate counsel argument is based upon appellate counsel's failure to raise his ineffective assistance of trial counsel allegation on direct appeal.  Due to the fact that this Court finds that Petitioner was not denied effective assistance of trial counsel, Petitioner's ineffective assistance of appellate counsel argument is rendered moot.

### D.     *The Nature of Petitioner's Guilty Plea*

Petitioner alleges that his guilty plea was not freely and voluntarily made in violation of his right to due process.  This claim is not based upon a changed interpretation of the laws under which Petitioner was convicted or a changed understanding of the nature of the crimes or offenses, but rather a changed understanding of the nature of the state's case against Petitioner and Petitioner's

failed claim of ineffective assistance of counsel claim.  "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case...." *Brady v. U.S.*, 397 U.S. 742, 757 (1970); see also *Waucaush v U.S.*, 380 F.3d 251 (6th Cir. 2004).  As the Brady Court held, "[w]e find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought...."  *Id*.

The trial court asked Petitioner what he had done that caused him to pled guilty and he answered:

> **Petitioner** -  I had some packages of heroin in my possession, and a firearm.
> **Court -** ...it was your intent to deliver them to another person, is that correct sir?
> **Petitioner** - Yes, your Honor**.**
> **Court** - Now, with respect to the felony forearm charge, at the time you had a firearm in your possession?
> **Petitioner** - Yes, your Honor.
> **Court** - And you had that firearm in your possession while you committed the crime of possession with intent to deliver, is that correct?
> **Petitioner** - Yes, you Honor.
> ....
> **Court** - Please tell the Court what it is you did...that causes you to pled guilty to possession of cocaine less than 25 grams and maintaining a drug house.
> **Petitioner** - I had a rock of cocaine.
> ....
> **Court** - ...I take it you kept these controlled substances in your home?
> **Petitioner** - Yes, your Honor.
> **Court** - And it was your intent to keep those substances in your home, is that correct?
> **Petitioner** - Yes, your Honor.

With these statements Petitioner admitted to committing the crimes for which he was charged, and Petitioner does not challenge the validity these statements today.  Therefore, this Court finds that Petitioner guilty plea should stand.

## III.   RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Petitioner Jemison's motion under 28 U.S.C. § 2254 to set aside his conviction be DENIED. Because this result would not be debatable among reasonable jurists, IT IS FURTHER RECOMMENDED that pursuant to 28 U.S.C. § 2253 (c) a certificate of appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 16, 2005                                    s/Steven D. Pepe
      Ann Arbor, Michigan                            United States Magistrate Judge

Certificate of Service

I hereby certify that on June 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Laura Moody and Andrew Wise.

      s/William J. Barkholz
      Courtroom Deputy Clerk